UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN COURTNEY,

                          Plaintiff,

       -vs-                       **No. 1:14-CV-00793 (MAT)**
                                         **DECISION AND ORDER**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                       Defendant.

---

## I. Introduction

Represented by counsel, John Courtney ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II. Procedural History

The record reveals that in May 2011, plaintiff filed applications for DIB and SSI, alleging disability beginning March 1, 2011. After his applications were denied, plaintiff requested a hearing, which was held before administrative law judge Grenville Harrop, III ("the ALJ") on December 20, 2012. The ALJ issued an

unfavorable decision on March 5, 2013. The Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

Initially, the ALJ found that plaintiff satisfied the insured status requirements of the Act through June 30, 2012. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 1, 2011, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairments of diabetes, diabetic neuropathy, diabetic retinopathy, and stage three kidney disease. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), "except that [he was] limited to frequently performing fine manipulations with his hands and [was] unable to operate dangerous machinery or drive a motor vehicle at night." T. 24-25. At step four, the ALJ found that plaintiff was capable of performing past relevant work as a retail sales associate. Accordingly, the ALJ found that plaintiff was not disabled and did not proceed to step five.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

2

findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.    Reliance on Opinions of Consulting Examiners**

Plaintiff contends that the ALJ's reliance on two consulting examining opinions resulted in an RFC finding that was not supported by substantial evidence. Dr. Donna Miller completed the first examination on September 28, 2010. Plaintiff reported to Dr. Miller that he suffered from diabetic retinopathy and that he was scheduled to have right eye laser surgery in October. Plaintiff's corrected vision was 20/50 in the right eye and 20/25 in the left, with both eyes 20/25 on a Snellen chart at 20 feet. Otherwise, his physical examination was normal. Dr. Miller opined that plaintiff had "mild limitation with repetitive motion of his hands secondary to his neuropathy." T. 228.

Dr. Samuel Balderman completed a second consulting examination on July 5, 2011. Plaintiff reported that he had had laser surgery on both eyes, and was scheduled for cataract surgery the next week. Plaintiff demonstrated 20/40 vision in the right eye, 20/25 vision in the left, and both eyes 20/25 on a Snellen chart at 20 feet. Plaintiff's physical examination was otherwise normal. Dr. Balderman opined that plaintiff "appear[ed] to have mild visual

3

impairment due to his diabetes," noting that he was "scheduled to have a surgical procedure on the right eye next week." T. 298.

The ALJ gave "substantial weight" to Dr. Miller's opinion, which he incorrectly stated was completed in November 2011. T. 26. The ALJ did not explicitly weigh Dr. Balderman's opinion, but noted that his "examination elicited virtually identical findings as those of Dr. Miller." Id. Plaintiff contends that the ALJ's mistake as to the date of Dr. Miller's examination was prejudicial, because plaintiff's alleged onset date was March 2011 and Dr. Miller's exam was performed in September 2010. Plaintiff further contends that the examinations of Drs. Miller and Balderman "were not reasonably tailored to the nature of [plaintiff's] conditions, and thus could not amount to substantial evidence." Doc. 7-1 at 12. Plaintiff requests that the case be "remanded for medical expert testimony based on a longitudinal knowledge of [plaintiff's] complex chronic diseases." T. 11.

Initially, the Court finds that the ALJ's misstatement of the date of Dr. Miller's examination was harmless error. As the ALJ noted, Dr. Miller's examination yielded essentially identical results as Dr. Balderman's. Dr. Miller's examination was thus support for a conclusion that plaintiff's condition had not appreciably worsened from the time that Dr. Miller examined him to the time Dr. Balderman did so.

The Court finds that the RFC finding was based on substantial evidence, which included the consulting examinations of Drs. Miller

4

and Balderman, as well as treatment notes from plaintiff's physicians and a consulting opthalmological examination from Dr. Theodore Prawak. Dr. Prawak, who examined plaintiff in September 2011 at the request of the state agency, opined that plaintiff had 20/20 corrected vision in the right eye and 20/20 -1 (indicating that plaintiff missed one letter on the line) in the left. He noted that plaintiff had right pseudophakia[1] and an "extremely constricted peripheral visual field" in the right eye, but opined that plaintiff's vision was "good enough to safely operate a motor vehicle [and] read," but that plaintiff could not operate dangerous machinery and climb heights. The ALJ gave Dr. Prawak's opinion "strong weight." T. 26.

The opinions of Drs. Miller, Balderman, and Prawak provided substantial evidence supporting the ALJ's RFC determination. See, e.g., Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)). Additionally, the RFC was supported by plaintiff's treatment records, which demonstrated unremarkable physical examinations, as well as plaintiff's reports of daily activities, which included showering, washing dishes for 15 to 20

---

[1] Pseudophakia refers to an artificial lens implanted after the natural eye lens has been removed. During cataract surgery the natural cloudy lens is replaced by an pseudopakia intraocular lens (IOL).

5

minutes at a time, washing laundry in his basement, shopping, and lifting and carrying up to 30 pounds.

Moreover, the ALJ correctly concluded that an April 18, 2011 letter from treating endocrinologist Dr. Toni Spinaris which opined that plaintiff was "unable to work due to diabetic eye disease" was an opinion on an issue reserved to the Commissioner, i.e., the ultimate determination of disability. See Harris v. Astrue, 935 F. Supp. 2d 603, 609 (W.D.N.Y. 2013) (citing 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1), aff'd sub nom., Harris v. Colvin, 561 F. App'x 81 (2d Cir. 2014). In any event, that opinion was temporary in nature, noting that plaintiff currently had left eye cataract surgery scheduled and his right eye was healing slowly from prior surgery; and the opinion indicated that plaintiff was able to drive, but not past 6:00 p.m. Thus, Dr. Spinaris' opinion did not significantly contradict the remaining evidence of record, which indicated that plaintiff's eyes improved following surgeries, and that he was able to drive, albeit only during daylight, notwithstanding his eye impairment.

As to plaintiff's argument that the consulting examinations were not "reasonably tailored" to "uncovering" plaintiff's limitations, the Court notes that it was plaintiff's ultimate burden to furnish evidence proving disability, and plaintiff was represented by an attorney at the hearing level. See Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) ("Even though the ALJ has an affirmative obligation to develop the record, it is the

plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require.") (internal citations omitted). The record does not indicate any further limitations that would have been "uncovered" with more tailored physical examinations. Rather, as discussed above, substantial evidence supports the ALJ's RFC finding.

B.  **Failure to Develop the Record**

Plaintiff contends that the ALJ failed to fully develop the record, arguing that the ALJ had an affirmative duty to recontact Dr. Spinaris in order to "clarify" her opinion. This "opinion," an April 18, 2011 letter "to whom it may concern," simply stated that plaintiff was currently unable to work due to diabetic eye disease. T. 447. As noted above, this opinion stated that plaintiff was able to drive but not at night, that his right eye was "healing slowly from prior surgery," and that he had cataract surgery scheduled for his left eye. This letter did not delineate any limitations other than that plaintiff should not drive at night, but merely opined that plaintiff was "unable to work," which, as discussed above, is an opinion on a matter reserved to the Commissioner. See, 935 F. Supp. 2d at 609.

Moreover, there is nothing about this letter that is unclear; therefore, the Court finds that the ALJ did not have a duty, in this particular situation, to further clarify the opinion with Dr. Spinaris. This record was complete with "no obvious gaps," and therefore the ALJ was "under no obligation to seek additional

7

information in advance of rejecting [plaintiff's] benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted).

**V. Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (doc. 7) is denied and the Commissioner's motion (doc. 10) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   June 21, 2017
         Rochester, New York.